IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SEI GLOBAL SERVICES, INC., : | |
| : | |
| Plaintiff, : | |
| : | Civil Action No. _____ |
| v. : | |
| : | |
| : | JURY TRIAL DEMANDED |
| DYNAMO SOFTWARE INC. and : | |
| DANIEL J. TEEBAGY : | |
| : | |
| Defendants. : | |

## COMPLAINT

1.  Plaintiff SEI Global Services, Inc. ("SEI") brings this action to redress Defendants' misappropriation of SEI's valuable trade secrets relating to its SEI Trade program. Defendant Dynamo Software Inc. ("Dynamo") is a competitor of SEI in the investment management technology industry. Dynamo recently hired Daniel J. Teebagy ("Mr. Teebagy"), a former employee of Wells Fargo & Co. ("Wells Fargo") who had access to the SEI Trade program pursuant to a confidentiality agreement between SEI and Wells Fargo. Shortly after Dynamo hired Mr. Teebagy, Defendants used the credentials issued to Mr. Teebagy on behalf of Wells Fargo to repeatedly access trade secret information regarding the SEI Trade program. Defendants had no legitimate purpose for accessing the SEI Trade program. Upon information and belief, Defendants unlawfully accessed SEI's trade secret information in order to develop a competitive product or otherwise unfairly compete with SEI. Accordingly, SEI seeks an order enjoining Defendants' use, disclosure and/or misappropriation of SEI's trade secrets, and awarding damages based on Defendants' misappropriation, Mr. Teebagy's breach of contract, and Dynamo's tortious interference with contractual relations and unfair competition.

## PARTIES

2.Plaintiff SEI Global Services, Inc. is a Delaware corporation with its principal place of business located at One Freedom Valley Drive, Oaks, PA 19456.

3.Upon information and belief, Dynamo Software Inc. is a Delaware corporation with its principal place of business located at 480 Pleasant St., Suite B200 Watertown, MA 02472.

4.Upon information and belief, Daniel J. Teebagy is an individual who resides at 4 Fernandez Circle, Randolph, MA 02368.

## NATURE OF THE ACTION

5.Through this action, SEI seeks injunctive relief and monetary damages as a result of Defendants' violations of the Defend Trade Secrets Act, the Pennsylvania Uniform Trade Secrets Act, Mr. Teebagy's breach of contract under Pennsylvania law, and Dynamo's tortious interference with a contractual relationship and unfair competition under Pennsylvania law.

6.Upon information and belief, Mr. Teebagy was employed by Wells Fargo from 2006 until March 3, 2017.

7.In connection with his employment with Wells Fargo, Mr. Teebagy was provided access to the SEI Trade program pursuant to an agreement between SEI and Wells Fargo that included a confidentiality provision.

8.In order to obtain access to the SEI Trade program on behalf of Wells Fargo, Mr. Teebagy agreed to the Terms of Use for the SEI Trade program.

9.On or about March 3, 2017, Mr. Teebagy left his employment at Wells Fargo.

10.Shortly after he left Wells Fargo, Mr. Teebagy commenced employment at Dynamo.  As of the filing of this Complaint, Mr. Teebagy remains employed by Dynamo.

11.     Mr. Teebagy continued to use his Wells Fargo username and password credentials to access the SEI Trade program after he was no longer employed by Wells Fargo and while he was employed by Dynamo.

12.     Mr. Teebagy used his Wells Fargo credentials to access the SEI Trade program from a computer that has a Dynamo IP address.

13.     Upon information and belief, Mr. Teebagy's use of his Wells Fargo login credentials to access the SEI Trade program after he was no longer employed by Wells Fargo was done within the scope of his employment at Dynamo and was done at Dynamo's direction or with Dynamo's knowledge.

14.     Upon information and belief, as of the filing date of this Complaint, Defendants continue to have access to information they obtained from their unauthorized access of the SEI Trade program.

15.     SEI hereby seeks monetary damages and injunctive relief to prevent any further breach of the Terms of Use for the SEI Trade program by Mr. Teebagy, misappropriation of SEI's trade secrets by Defendants, and tortious interference with a contract and unfair competition by Dynamo.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because SEI asserts a claim under the Defend Trade Secrets Act, 18 U.S.C. § 1833 (the "DTSA"), which arises under the laws of the United States.

17.     This court has supplemental jurisdiction over the claims for violation of the Pennsylvania Uniform Trade Secrets Act, breach of contract and tortious interference with a contracted asserted herein pursuant to 28 U.S.C. § 1367 because the claims are so related to the

federal claim that they form part of the same case or controversy and derive from a common nucleus of operative facts.

18. Venue is proper under 28 U.S.C. §§ 1391(b) and 1400(a) because, among other reasons, the trade secrets Defendants misappropriated are located in this judicial district.

19. Venue is also proper in this judicial district because Mr. Teebagy signed an agreement relating to his use of the SEI Trade program that expressly granted consent to the exclusive jurisdiction of the courts in the Commonwealth of Pennsylvania.

## FACTUAL BACKGROUND

**A.     SEI and Its Valuable Trade Secrets**

20. SEI is a leading global provider of investment processing, investment management, and investment operations solutions that help corporations, financial institutions, financial advisors, and individuals create and manage wealth.

21. Among other services, SEI offers wealth management platforms to independent financial advisors, including end-to-end solutions for practice management, investment management, and investment processing.  These solutions help financial advisors strengthen client relationships and improve their business success.

22. Financial advisors have historically struggled to develop a technology solution for managing workflow processes that include handling, documenting, and tracking investors' private fund transactions.

23. In September 2014, SEI began developing a software solution that addressed these issues, which eventually became known as SEI Trade.

24.     SEI Trade streamlines and simplifies the fulfillment, transaction, and on-boarding processes for investment funds, making it easier for investment firms to expand their product lines and for fund managers to gain new insights into their investors.

25.     SEI Trade's intelligent form completion and digital document management streamline the process of completing complicated investment forms that otherwise requires significant manual labor and is prone to errors.

26.     SEI Trade's workflow automation allows customers to create customized workflows and related checklists to help customers manage the investment process.

27.     Upon information and belief, the functionality that the SEI Trade program provides is unique in the investment management industry, and it provides SEI with a competitive advantage.

**B.      SEI's Efforts to Safeguard the Secrecy of SEI Trade**

28.     SEI employs numerous safeguards with their customers, prospective customers and employees in order to ensure the secrecy of the business logic, functionality and design of SEI Trade.

(i).     Safeguards with Respect to Customers or Prospective Customers

29.     SEI only presents SEI Trade to prospective clients pursuant to a non-disclosure agreement that prohibits sharing any information about SEI Trade.

30.     After prospective-client presentations, SEI sales representatives collect any documents used in connection with demonstrating the functionality of SEI Trade.

31.     Other than a one-page sell sheet with high-level information and a January 6, 2017 press release that described the product generally, SEI does not publicly distribute promotional materials that describe the functionality of SEI Trade.

32. Each of SEI's customers that use SEI Trade signs a non-disclosure agreement that prohibits sharing any confidential information about SEI Trade.

33. In addition, all customers' and users' access to SEI Trade is password protected and has a time delay mechanism that automatically logs out after a user is inactive for fifteen minutes.

   (ii).   <u>Safeguards with Respect to SEI Employees</u>

34. SEI's campus security guards routinely patrol the buildings, including the building where SEI Trade was developed and the software is hosted, and SEI monitors access to the building with key-card operated locks.

35. SEI limits access to the building where the SEI Trade program was developed and is hosted by requiring authorized personnel to use a key card.

36. SEI conducts a background check on each of the SEI employees involved in the development of SEI Trade.

37. In addition, each of the SEI employees involved in the development of SEI Trade also signed a non-disclosure agreement prohibiting sharing information about the SEI Trade product.

38. SEI's Code of Conduct and employee training instruct personnel not to share or distribute information about SEI's confidential business information and/or trade secrets.

39. Access to SEI Trade for SEI employees is password protected and has a time delay mechanism that automatically logs out after a user is inactive for fifteen minutes.

40. Only SEI employees who have a specific business reason to access the SEI Trade may receive credentials for access.

C. **Mr. Teebagy's Access to SEI Trade as a Wells Fargo Employee**

41. Wells Fargo was SEI's first customer for the SEI Trade program and began to use the SEI Trade program in August 2015.

42. Wells Fargo agreed to only provide SEI's confidential information to Wells Fargo employees after Wells Fargo had informed them of their obligation to maintain the confidentiality of the information and after the Wells Fargo employee signed a written agreement indicating they would maintain the confidentiality of the information.

43. While employed by Wells Fargo, Mr. Teebagy was an authorized user of the SEI Trade program.

44. As a result of Wells Fargo's compliance with the confidentiality provision of its agreement with SEI or otherwise, Mr. Teebagy was aware of his duty to keep the information related to or obtained from the SEI Trade program confidential.

45. Mr. Teebagy created two different user accounts in connection with his role at Wells Fargo, one of which provided him with access to the SEI Trade program in a client administrator role and the other provided him with access in an investor role.

46. In connection with the creation of each of his user accounts, Mr. Teebagy scrolled through and agreed to SEI's Terms and Conditions for the SEI Trade program (the "Terms of Use"). Among other things, the Terms of Use (1) limited his use of SEI Trade to "noncommmerical use, or as otherwise may be allowed upon SEI's prior written consent"; (2) prevented him from taking actions to "modify, update, reverse engineer, distribute, transfer to a third party, or otherwise exploit the Tool or any reports, data, content or other information appearing on the Tool"; and (3) prohibited him from "us[ing] the Tool to generate any output for a third party's commercial use."

**D.     Defendants' Improper Actions**

47.    On or about, March 3, 2017, Mr. Teebagy's employment with Wells Fargo was terminated.

48.    Mr. Teebagy was aware that the SEI Trade program was a proprietary tool of SEI's that he only had access to pursuant to his role as an employee for Wells Fargo.

49.    Dynamo was aware or should have been aware that Mr. Teebagy was not permitted to disclose trade secret information derived from SEI Trade.

50.    Nevertheless, after Mr. Teebagy left Wells Fargo, on at least 9 occasions, he accessed the SEI Trade program during the course of his employment by Dynamo. Mr. Teebagy accessed the SEI Trade program during this time by using the credentials that were issued to him in his role as an employee of Wells Fargo, even though his employment at Wells Fargo ended weeks earlier.

51.    SEI did not learn that Mr. Teebagy continued to access the SEI Trade program from Dynamo after his employment with Wells Fargo had ended until April 14, 2017. When SEI learned that Mr. Teebagy had accessed the SEI Trade program after the termination of his employment with Wells Fargo, SEI immediately took steps to confirm that he could not access the SEI Trade program.

52.    Upon information and belief, Defendants (1) misappropriated, are continuing to misappropriate, and/or will misappropriate SEI's confidential, proprietary, and trade secret information relating to the SEI Trade program by accessing information gained by Mr. Teebagy after he left Wells Fargo, and (2) disclosed or will inevitably disclose SEI's trade secrets related to its SEI Trade program by developing and offering for sale a competing product, in direct contravention of the Terms of Use.

## **COUNT I**

## **MISAPPROPRIATION OF TRADE SECRETS<br>IN VIOLATION OF THE DEFEND TRADE SECRETS ACT<br>(AGAINST BOTH DEFENDANTS)**

53. The facts alleged in the preceding paragraphs are incorporated herein as if set forth in full.

54. Upon information and belief, Defendants have violated the Defend Trade Secrets Act, 18 U.S.C. § 1836(b), by misappropriating trade secrets for products or services used in, or intended for use in, interstate or foreign commerce.

55. SEI possesses trade secrets in the form of, among other things, proprietary workflow tools, processes, business logic, and software applications, which are sufficiently secret to derive economic value from not being generally known to persons who can obtain economic value from the disclosure or use of that information. The SEI Trade program was created, refined, and maintained over tens of thousands of hours of design and development work, and would be unavailable to Defendants through any public forum or location.

56. SEI's proprietary SEI Trade program is not known or available to the public, nor could it be "reverse engineered" through public sources.

57. Defendants misappropriated SEI's trade secrets when Mr. Teebagy accessed SEI's proprietary SEI Trade program during the course of his employment by Dynamo using a Dynamo IP address.

58. Upon information and belief, Defendants used Mr. Teebagy's access to SEI's proprietary SEI Trade program to copy the design, logic, and functionality of SEI's SEI Trade product or to otherwise unfairly compete with SEI.

59. Defendants will continue to misappropriate and otherwise use SEI's trade secrets if they are not enjoined from using, accessing, or sharing the copies of SEI's Trade product.

60. As a direct result of Defendants' misappropriation of SEI's trade secrets, SEI has suffered and continues to suffer irreparable injury for which there is no adequate remedy at law, and SEI has suffered and continues to suffer significant damages that will be proven at trial.

61. The Court should award injunctive relief to SEI under the DTSA to prevent the actual or threatened misappropriation of trade secrets.

## COUNT II

**MISAPPROPRIATION OF TRADE SECRETS
IN VIOLATION OF THE PENNSYLVANIA UNIFORM TRADE SECRET ACT
(AGAINST BOTH DEFENDANTS)**

62. The facts alleged in the preceding paragraphs are incorporated herein as if set forth in full.

63. The confidential and proprietary information described in the paragraphs above constitute trade secrets of SEI.

64. This confidential and proprietary information was created and composed as a result of a significant investment of time, expense, and effort by SEI.

65. This confidential and proprietary information is not known outside of SEI, except by parties who are bound by non-disclosure agreements, and SEI has instituted reasonable safeguards to ensure the confidentiality of this information, including, but not limited to, restricted access and password-based security measures.

66. This confidential and proprietary information is not easily obtainable or discoverable by entities and/or individuals outside of SEI or its customers.

67. This confidential and proprietary information has great value to SEI and is important to the business purposes of SEI.

68. SEI's confidential and proprietary information constitutes a trade secret pursuant to the Pennsylvania Uniform Trade Secrets Act, 12 Pa. C.S.A. § 5302 (the "PUTSA").

69. Defendants knew or had reason to know that Defendants' access to the SEI Trade program was obtained in violation of Mr. Teebagy's duty to maintain the secrecy of the SEI Trade program.

70. Dynamo's continued access to and possession of this information as a competitor of SEI constitutes a violation of the PUTSA.

71. Mr. Teebagy's continued access to and possession of this information as an employee of SEI's competitor constitutes a violation of the PUTSA.

72. SEI's confidential and proprietary information regarding SEI Trade has independent economic value.

73. SEI has incurred, and will continue to incur, significant damages and irreparable harm that were foreseeable, such as the loss of trade secrets, loss of confidential and proprietary information, and injury to its business operation and development.

74. Under the PUTSA, SEI is entitled to injunctive relief to prevent the breach and/or any further disclosure of this confidential and proprietary information.

75. An award of exemplary damages pursuant to the PUTSA is necessary because the Defendants willfully misappropriated SEI's trade secret.

## COUNT III

### BREACH OF CONTRACT
### (AGAINST DANIEL J. TEEBAGY)

76. The facts alleged in the preceding paragraphs are incorporated herein as if set forth in full.

77. In exchange for valuable consideration to which Mr. Teebagy was not otherwise entitled, Mr. Teebagy entered into a contract with SEI when he agreed to the Terms of Use, which, among other things: (1) limited his use of SEI Trade to "noncommmerical use, or as otherwise may be allowed upon SEI's prior written consent"; (2) prevented him from taking actions to "modify, update, reverse engineer, distribute, transfer to a third party, or otherwise exploit the Tool or any reports, data, content or other information appearing on the Tool"; and (3) prohibited him from "us[ing] the Tool to generate any output for a third party's commercial use."

78. Mr. Teebagy materially breached the contract by, among other things, transferring access the SEI Trade product to Dynamo and using SEI Trade to generate output for Dynamo's commercial use.

79. SEI has performed all of its obligations under the Terms of Service.

80. As a direct and proximate result of Mr. Teebagy's material breaches, SEI has suffered, and/or will suffer, severe and serious economic injury and damage to its business operations and development, including, but not limited, to lost profits.

## COUNT IV

## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP
## (AGAINST DYNAMO SOFTWARE INC.)

81. The facts alleged in the preceding paragraphs are incorporated herein as if set forth in full.

82. The Terms of Use to which Mr. Teebagy agreed constitute a valid and enforceable contract between Mr. Teebagy and SEI and prevent disclosure of SEI's proprietary information to third parties.

83. Upon information and belief, Dynamo was aware of, or should have been aware of, the existence of the contract between Mr. Teebagy and SEI that prevents Mr. Teebagy from using his access to SEI Trade for the commercial benefit of any third-party, including Dynamo.

84. Despite this knowledge, upon information and belief, Dynamo tortiously, wrongfully, improperly, intentionally, maliciously and without privilege or justification attempted to, and did, interfere with the contractual relations between SEI and Mr. Teebagy by inducing him to breach the Terms of Use by accessing the SEI Trade program for the purpose of modifying, updating, reverse engineering, distributing, and/or transferring information to a third party and/or generating output for a third party's commercial use.

85. SEI has suffered damages and will continue to suffer damages as a result of Dynamo's interference with its contractual relationship.

86. Dynamo's conduct is willful, malicious, outrageous, and in reckless disregard for SEI's rights and entitle SEI to an award of punitive damages.

## COUNT V

## UNFAIR COMPETITION
### (AGAINST DYNAMO SOFTWARE INC.)

87. The facts alleged in the preceding paragraphs are incorporated herein as if set forth in full.

88. Both SEI and Dynamo offer investor platforms that support the functions of investor prospecting, onboarding, service, and reporting, among other similar services.

89. Dynamo's improper access to SEI Trade gives Dynamo an unfair economic advantage by leveraging SEI's trade secret information to assist Dynamo in creating a competing product or to otherwise unfairly compete with SEI.

90. Dynamo's unlawful use of SEI's confidential trade secret information constitutes unfair competition under Pennsylvania law.

91. As a direct and proximate Dynamo's unfair competition practices, SEI has suffered, and/or will suffer, severe and serious economic injury and damage to its business operations and development, including, but not limited, to lost profits and lost market share.

## JURY DEMAND

Plaintiff SEI Global Services, Inc. hereby demands that all issues so triable be determined by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff SEI Global Services, Inc. prays for judgment as follows:

    (a) the entry of judgment in its favor;

    (b) an Order requiring Defendants to return any and all documents, data, copies, notes, and records related to the SEI Trade program currently in their possession;

(c) an Order requiring that Defendants produce for forensic inspection any computer on which Defendants accessed the SEI Trade program;

(d) an Order requiring Defendants not to destroy evidence related to this matter;

(e) an Order requiring Defendants to produce any usernames and passwords through which it can access the SEI Trade program;

(f) an Order requiring Defendant Daniel Teebagy to comply with all terms and conditions of the Terms of Use;

(g) an Order requiring Defendants to pay to SEI damages in an amount to be determined, plus interest; punitive damages; and such other relief as may be appropriate;

(h) an Order prohibiting Defendants, and those acting in concert with Defendants, from:

(i) any further use of SEI's trade secrets, products, and confidential and proprietary information; and

(ii) commencing or continuing any business activity involving such matters;

(i) an Order requiring that Defendants disclose the nature and extent of the misappropriation and immediately return all data and devices used to misappropriate the information;

(j) an Order requiring Defendant to pay to SEI damages, which should be doubled pursuant to 12 Pa. C.S.A. § 5304(b), an award of reasonable attorneys' fees, expenses, and costs pursuant to 12 Pa. C.S.A. § 5305, and such other relief as may be appropriate; and

(k) an Order requiring such other and further relief, including attorneys' fees and the costs of these proceedings, as it deems appropriate.

Respectfully submitted,<br>
MORGAN, LEWIS, & BOCKIUS LLP

May 15, 2017

*/s/ J. Kevin Fee*

J. Kevin Fee (PA Bar No. 81715)
Jordana S. Rubel (*pro hac vice* forthcoming)
Jane W. Wise (*pro hac vice* forthcoming)
1111 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Telephone: 202.739.5353
Facsimile: 202.739.3001
Email: kevin.fee@morganlewis.com
jordana.rubel@morganlewis.com
jane.wise@morganlewis.com

*Attorneys for SEI Global Services, Inc.*